UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OLD SAYBROOK POLICE UNION        :
C.O.P.S. LOCAL #106, INC.,              :
        Plaintiff,        :        CIVIL ACTION NO.
     v.        :        3:08-cv-01025 (JCH)
                            :
EDMUND MOSCA, ET AL.,                 :
        Defendants,        :        FEBRUARY 3, 2009

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS [Doc. Nos. 45 & 48]**

## I.     INTRODUCTION

On July 7, 2008, plaintiff, Old Saybrook Police Union C.O.P.S. Local #106, Inc.

("the Union"), initiated the present action against defendants Edmund Mosca, Joanne

Klingerman, Thomas O'Brien, and William Childress, Trustee, Helene Banta Revocable

Trust (collectively, "the defendants").  In its Complaint, the Union asserts seven causes

of action based on the alleged improper distribution of funds from the testamentary trust

of Helene Banta.  Counts One through Five assert claims under Connecticut state law;

Counts Six and Seven assert claims under the federal Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c).

Mosca, Klingerman, and O'Brien have filed a Motion to Dismiss the Union's

Complaint, in its entirety, for failure to state a claim upon which relief can be granted.

See Fed. R. Civ. P. 12(b)(6).  Childress has filed a Motion to Dismiss for lack of subject

matter jurisdiction, as well as for failure to state a claim upon which relief can be

granted.  See Fed. R. Civ. P. 12(b)(1) & 12(b)(6).  The defendants argue that the Union

lacks standing to pursue its claims.

For the following reasons, the defendants' Motions to Dismiss [Doc. Nos. 45 &

1

48] are **GRANTED** as to Counts Six and Seven.  With the federal claims dismissed, the court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, defendants' Motions to Dismiss [Doc. Nos. 45 & 48] are **GRANTED** as to Counts One through Five, and those claims are dismissed without prejudice to refiling in state court.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss, the court accepts the allegations of the Complaint as true and construes them in a manner favorable to the pleader.   Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States,  319 F.3d 550, 554 (2d Cir. 2003 (discussing Rule 12(b)(1) motion to dismiss).

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint."  Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer, 416 U.S. at 236).  The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]."  Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).  On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a

preponderance of the evidence that the court has subject matter jurisdiction over the complaint.  Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993).  Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits."  Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint.  United States v. City of N.Y., 359 F.3d 83, 87 (2d Cir. 2004).  In deciding a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-5 (2007).

## III.   BACKGROUND

The Town of Old Saybrook, Connecticut ("Old Saybrook" or the "Town") is a Connecticut municipality.  The Town of Old Saybrook Police Department ("Old Saybrook Police Department" or the "Department") is a local law enforcement department within the Town and falls under its governance.  See Verified Complaint ("Complaint") at ¶ 10.  At all times relevant to this action, Mosca was the chief of the Old Saybrook Police Department, O'Brien was the deputy chief of the Department, and

3

Klingerman was the executive assistant to the chief.  See id. at ¶¶ 6-8.

The plaintiff, Old Saybrook Police Union C.O.P.S. Local #106, Inc. is a corporation organized and existing under the laws of the State of Connecticut that represents the interests of the police officers of Old Saybrook.  See id. at ¶¶ 5, 25.  The Union was formerly known as the "Old Saybrook Policemen's Brotherhood Association." See id. at ¶ 5.  The Union or its predecessor has been in existence since at least the 1970s.  See id.

The McMurray Kirkland Memorial Fund (the "Mac Fund"), named in the memory of two Old Saybrook police officers, is a fund intended by the donors to supplement the needs of the Old Saybrook Police Department.  See id. at ¶ 10.  At all times relevant to this action, Mosca and O'Brien controlled the Mac Fund.  See id. at ¶ 11.

On or about February 15, 1999, Helene S. Banta, a resident of Essex, Connecticut, died, leaving a trust initially executed on November 20, 1990 and last amended January 28, 1999 (the "Banta trust").  See id. at ¶ 12.  The Banta trust named several beneficiaries, among them the "Old Saybrook Police Benevolent Association of Old Saybrook, Connecticut," to which Banta bequeathed a certain percentage of her remaining estate "for its unrestricted use."  See Fourth Amendment to Banta Trust, dated January 26, 1998, at 2.  However, no organization called the "Old Saybrook Police Benevolent Association" existed at the time of Banta's death, nor has any such organization ever existed.  See Complaint at ¶ 13.

Prior to the creation of the Banta Trust, it was customary that members of police department voluntary associations in the State of Connecticut named their organizations with the name of the town followed by "Police Benevolent Association."

4

See id. at ¶ 14.  For example, the Hamden Police Benevolent Association, the East

Lyme Police Benevolent Association, Inc., and the Yale Police Benevolent Association,

Inc., were incorporated in 1971, 1982, and 1988, respectively.  See id.

Subsequent to Banta's death, at some time between February 1999 and May

1999, Childress, or someone acting pursuant to his instruction, contacted Mosca,

O'Brien, or Klingerman at the Old Saybrook Police Department concerning the

distribution of Banta trust funds to the "Old Saybrook Police Benevolent Association."

See id. at ¶ 17.  Despite their familiarity with the Union, the Union alleges that Mosca,

O'Brien, or Klingerman fraudulently concealed its existence and instructed Childress or

Childress' agent to make the monies payable to the Mac Fund.  See id.

Between May 2000 and March 2002, Childress dispersed approximately

$64,045.63 from the Banta trust to the Mac Fund.  See id. at ¶¶ 18-23.  Specifically,

Childress sent three checks, payable to the "Raymond McMurray Memorial Fund," to

the "Raymond McMurray Memorial Fund, Old Saybrook Police Department, 225 Main

Street, Old Saybrook, Connecticut, 06475, Attention: Thomas O'Brien."  See id. at ¶ 18.

Upon receipt of the checks, Mosca, O'Brien, or Klingerman deposited approximately

$15,000.00 of the funds into a certificate of deposit at the New Haven Savings Bank,

and the remainder into a savings account at the same.  See id. at ¶¶ 18-23.  Both the

certificate of deposit and the savings account were entitled "McMurray Kirkland

Memorial Fund."  See id.

## IV.    ANALYSIS

The Union initiated the present action to recover the Banta trust monies under

the claim that it, rather than the Mac Fund, is the proper beneficiary of Banta's gift to

the non-existent Old Saybrook Police Benevolent Association.  The defendants assert

that the Union lacks standing to bring both its state law and RICO claims because, <u>inter</u>

<u>alia</u>, even were the Banta trust monies sent to the Mac Fund erroneously, the Union

was not injured by the improper distribution because it has no legal interest in the Banta

gift.  Under Article III of the Constitution, federal courts have jurisdiction only over

"cases" and "controversies."  U.S. Const. art. III, § 2.  Standing "is an essential and

unchanging part of the case-or-controversy requirement of Article III."  <u>Lujan v.</u>

<u>Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  The "irreducible constitutional

minimum of standing" contains the following three elements:

> First the plaintiff must have suffered an injury in fact – an invasion of a legally
> protected interest which is a) concrete and particularized, and b) actual or
> imminent, not conjectural or hypothetical.  Second, there must be a causal
> connection between the injury and the conduct complained of – the injury
> has to be fairly traceable to the challenged action of the defendant, and not
> the result of the independent action of some third party not before the court.
> Third, it must be likely, as opposed to merely speculative, that the injury will
> be redressed by a favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560-61 (internal citations, quotation marks,

and alterations omitted).  Consequently, where a plaintiff does not satisfy the three

elements of standing, the court lacks subject matter jurisdiction over the suit.

A.    <u>RICO Claims</u>[1]

The RICO civil remedies statute provides that, "[a]ny person injured in his

business or property by reason of a violation of [RICO] may sue therefor in any

appropriate United States district court and shall recover threefold the damages he

---

[1]For the purposes of analyzing plaintiff's standing with regard to its RICO claims, the court assumes that the Union is, in fact, the legal successor in interest to the Old Saybrook Policemen's Brotherhood Association.

sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).  Thus, in order to have standing to bring a RICO suit, the plaintiff must show injury to his business or property by reason of a RICO violation.

The Union argues that, as the proper beneficiary of the Banta trust monies bequeathed to the Old Saybrook Police Benevolent Association, it was injured when those monies were improperly distributed to the Mac Fund.  The Union rests this argument on two theories: 1) that it was Banta's intent that, upon her death, the monies in question be paid to the voluntary association affiliated with the Old Saybrook Police Department, i.e., the Union, and that this intention can be deduced from certain evidence found outside the four corners of the trust agreement; and 2) that Banta's bequest created a charitable trust, which the court must construe with the utmost liberality in order to carry out the charitable purpose of the donor, namely, to give money to the voluntary association affiliated with the Old Saybrook Police Department.[2] These arguments will be addressed separately.

1.      Parol Evidence Argument

The Union's first theory – that it was Banta's intent that the monies in question be paid to the voluntary association affiliated with the Old Saybrook Police Department – has two primary bases: 1) the customary naming habits of police department voluntary associations in Connecticut in the 1970s and 1980s, see Complaint at ¶ 14; see also Memorandum in Support of Motion for Preliminary Injunction at 4; and 2) the

---

[2]The Union relied solely upon its first theory in its Motion for Preliminary Injunction [Doc. No. 6] and related filings.  It was not until its opposition to the instant Motions that it first claimed Banta's bequest created a charitable trust.

testimony of Shirley Antonio.

With regard to the first, the Union argues that, prior to the creation of the Banta Trust, it was customary that members of police department voluntary associations in the State of Connecticut named their organizations with the name of the town followed by "Police Benevolent Association."  See id.  Thus, by indicating that monies should be distributed to the Old Saybrook Police Benevolent Association, Banta's intent must have been for the funds to go to the voluntary association affiliated with the Old Saybrook Police Department, namely, the Union or its predecessor, the Old Saybrook Policemen's Brotherhood Association.

Concerning the second, at a preliminary injunction hearing on November 4, 2008, the court heard the testimony of Shirley Antonio, executive assistant to Attorney Childress and longtime friend of Helene Banta.  See Transcript [Doc. No. 47] at 147-148.  When questioned about the context in which the bequest to the Old Saybrook Police Benevolent Association came about, Antonio stated:

> A couple policemen had gone to [Banta's] house and helped with her sister Marjory who had fallen.  She wanted me to give them a tip.  I called up Tom O'Brien to ask if I could, you know, she wanted to give $50, $100 or whatever to the police that had come to the house.  He said it wasn't necessary.  They were just doing their job and that was the end of previous conversations that I had ever had with Tom O'Brien about why money should go into the police department.  When Helene was making some changes . . . she wanted to change her will and give money to, like, the American Cancer Society because I had arranged rides for her for her radiation treatments.  That's when the police came up again.  Do you want to now give some money to the police and she said yes.  So I put down the Police Benevolent.  That's how we came up with the name.  I didn't call down to the police station.  We just came up with that name.  That's what I thought charitable organizations for police were called.

See id.

8

The naming customs and Antonio's testimony regarding Banta's intent are parol evidence; that is, they are evidence outside the four corners of the Banta trust agreement concerning matters governed by that integrated agreement.[3]  See, e.g., HLO Land Ownership Assocs. Ltd. Pshp. v. City of Hartford, 248 Conn. 350, 358 (Conn. 1999).  Under Connecticut state law, parol evidence cannot be received to correct a mistake in a will.  See Fairfield v. Lawson, 50 Conn. 501, 509 (Conn. 1883).  In construing a will, parol evidence is only admissible to resolve a latent ambiguity, "where the meaning of the testator's words is neither ambiguous or obscure . . . but from some of the circumstances admitted in proof, an ambiguity arises as to which of the two or more things, or two or more persons, each answering the words in the will, the testator intended to express."  Fairfield, 50 Conn. at 510-11.  In all other cases, parol evidence of the testator's intention is excluded, and if the testator's intention cannot be deduced from the writing, explained by the circumstances, there is no will.  See Fairfield, 50 Conn. at 511.

While the court in Fairfield considered a problematic gift in a will, not a trust, Connecticut law treats testamentary instruments similarly.  See, e.g., Connecticut Bank & Trust Co. v. Lyman, 148 Conn. 273 (Conn. 1961) (holding " . . . [W]e cannot rewrite a will or a trust instrument") (emphasis added); see also, Connecticut Nat'l Bank & Trust

---

[3]According to the Connecticut Supreme Court, the parol evidence rule "is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme."  HLO Land Ownership Assocs. Ltd. Pshp. v. City of Hartford, 248 Conn. 350, 357-358 (Conn. 1999).

Co. v. Chadwick, 217 Conn. 260, 270 (Conn. 1991) (holding that, in certain circumstances, "information is necessary to resolve a latent ambiguity arising from the execution of a will or trust instrument") (emphasis added); Heyman Assocs. No. 1 v. Ins. Co. of Pa., 231 Conn. 756, 783 (Conn. 1995) (recognizing that, "[i]n Connecticut, the vast majority of cases considering a claim of latent ambiguity have arisen in three limited contexts: (1) interpretation of statutes; (2) interpretation of wills or trusts; and (3) interpretation of deeds to real property) (emphasis added).  Consequently, this court applies the ruling in Fairfield to the present case.

   Like the will in Fairfield, the Banta trust is not ambiguous.[4]  It clearly states that a portion of the trust should be distributed to the "Old Saybrook Police Benevolent Association, of Old Saybrook, Connecticut, for its unrestricted use."  See Fourth Amendment to Banta Trust, dated January 26, 1998, at 2.  The trust would be ambiguous if there were two or more organizations by this name at the time of Banta's death, but there were not.  In fact, no organization called the "Old Saybrook Police Benevolent Association" has ever existed.  The trust is not ambiguous; it is incorrect. As previously discussed, under Fairfield, parol evidence cannot be admitted to correct a mistake.  See Fairfield, 50 Conn. at 511.  Therefore, the Union's parol evidence of

---

   [4]In 1883, the Fairfield court noted that, "while there is now substantial harmony among the courts concerning the abstract principles that apply [to the question of when to admit parol evidence in construing a testamentary instrument], there is, it must be confessed, considerable diversity in their application." Fairfield v. Lawson, 50 Conn. 501, 512 (Conn. 1883).  In this respect, little has changed.  See, e.g., Shulman v. Connecticut Bank & Trust Co., 5 Conn. App. 561 (Conn. App. Ct. 1985) (holding that, "a misdescription [of a beneficiary in a will] has been called a latent ambiguity that is explainable by parol evidence of the testator's intention").  Yet, despite Connecticut courts' sometimes-inconsistent application of the rules, it is the opinion of this court that, in this case, as in Fairfield, the testamentary instrument contains a mistake, rather than an ambiguity, and therefore parol evidence of Banta's intent is inadmissible for the purpose of determining the beneficiary of the bequest made to the Old Saybrook Police Benevolent Association.

Banta's intent is inadmissible.[5]  This leaves a testamentary trust provision containing a gift to a nonexistent organization, and under <u>Fairfield</u>, that gift is void for uncertainty. <u>See</u> <u>id.</u>  Thus, under the Union's first theory, it was not, and is not, a beneficiary of the Banta trust.  It is not entitled to any monies from the trust regardless of whether such monies were improperly distributed in violation of RICO.  Consequently, the Union has not shown any injury under its first theory, and therefore this theory does not give it standing to maintain the present action.

    2.      Charitable Trust Argument

The Union's second theory is that Banta's bequest to the "Old Saybrook Police Benevolent Association, of Old Saybrook, Connecticut, for its unrestricted use," created a charitable trust, which, under Connecticut law, must not fail because of impossibility, impracticability, or even illegality.  <u>See</u> Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss [Doc. No. 49] at 7.  Rather, the Union argues, the court must apply the <u>cy pres</u> doctrine, or the doctrine of approximation, construe the Banta trust liberally in order to carry out Banta's charitable purpose, and find that the funds in question ought to be dispersed to the Union.

The requirements for the establishment and administration of charitable trusts are set forth in the Connecticut General Statutes, Section 45a-514, <u>et seq.</u>  Section

---

[5]Even were Antonio's testimony admissible, it is not clear that her testimony aids the Union.  While the passage quoted on page 8, <u>supra</u>, seems to support the Union's claim that Banta intended the trust monies to go to Old Saybrook police <u>officers</u>, <u>i.e.</u>, the Union, Antonio later states that it was Banta's intent for the funds to go to the police <u>department</u>.  <u>See</u> Transcript [Doc. No. 47] at 149, ln. 18-20 ("Q. And that wording, the intent was for the police <u>department</u>? A. Correct") (emphasis added).  Thus, the only intent of Banta that the Antonio testimony establishes decisively is Banta's intent to gift a certain sum to a "charitable organization for police" in Old Saybrook – a description which seems to apply equally to the Union and the Mac Fund.

45a-515 provides that:

> Any person may, by will, deed or other instrument, give, devise, or bequeath property, real or personal or both, to any trustee or trustees, and may provide in such instrument that the property so given, devised or bequeathed shall be held in trust and the income or principal applied in whole or in part for any charitable purpose.  A donor or testator shall not be required to designate in such will, deed or other instrument the particular charitable purpose or class of purposes for which the property shall be used or the income applied. Any such gift, devise or bequest shall be valid and operative, provided the donor or testator shall give to the trustee or trustees thereof or to any other person or persons, the power to select, from time to time and in such manner as such donor or testator may direct, the charitable purpose or purposes to which such property or the income thereof shall be applied; and such gift, devise or bequest, accompanied by such power of selection, shall not be void by reason of uncertainty.

Conn. Gen. Stat. § 45a-515.  Thus, in order to create a charitable trust, the donor or testator must either: 1) designate a charitable purpose or class of purposes for which the property in question shall be used; or 2) give to the trustee, or any other person or persons, the power to select such charitable purpose(s).

Banta did neither.  The trust agreement merely states that the trustee is to distribute a portion of the Banta estate to the "Old Saybrook Police Benevolent Association, of Old Saybrook, Connecticut, for its unrestricted use."  See Fourth Amendment to Banta Trust, dated January 26, 1998, at 2.  The terms of the trust agreement give no indication of any general intent to devote the funds to a charitable use, nor does the agreement give any other individual or entity the power to select a charitable use for the funds.  To the contrary, the trust agreement states clearly that the monies should be distributed to the Old Saybrook Police Benevolent Association "for its unrestricted use."  See id.  Consequently, as this court reads the Connecticut statute, the requirements for the creation of a charitable trust have not been met.

12

However, even had Banta created a charitable trust to benefit the Old Saybrook Police Benevolent Association, the Union would not be entitled to the trust assets.  In Duncan v. Higgins, 129 Conn. 136 (Conn. 1942), the Connecticut Supreme Court considered a will that left certain monies to "the Second Unitarian Congregational Society of Brooklyn, New York."  Duncan v. Higgins, 129 Conn. 136, 138 (Conn. 1942). Prior to the distribution of the decedent's estate, the Second Unitarian Congregational Society of Brooklyn had ceased to function.  See id.  The court considered whether the monies in question should be distributed to the First Unitarian Society of Brooklyn – a comparable religious corporation of the same denomination in the same section of Brooklyn.  Id. at 139.  The court began its analysis by stating:

> Ordinarily where an organization to which a charitable gift or devise is made is incapable of taking it, the question whether its payment to another organization will be permitted is determined upon the basis of the applicability of the cy pres doctrine or doctrine of approximation; and that doctrine will be applied only where the court finds in the terms of the will, read in the light of surrounding circumstances, a general intent to devote the property to a charitable use, to which the intent that it go to the particular organization named is secondary.

Id. at 140 (emphasis added).  The court also noted that, where the organization named in the will has ceased to exist:

> [I]n the absence of any indication of intent other than one to benefit the particular organization named, it has been held that the gift lapsed.  That the functions of the organization which has ceased to exist have by merger passed to another corporation which is carrying on a similar work has been held not sufficient ground to permit the gift to go to the latter in the absence of a dominant intent to devote it to more general charitable uses.

Id. (emphasis added).  Following these principles, the court held:

> In the will before us there is simply a gift to a named corporation, the Second Unitarian Congregational Society, without any reference to the use to be made of the money . . . .   Neither in the will nor in any intrinsic evidence is

13

there any indication of a general intent on the part of the testatrix that the gift should be devoted to a charitable use to which the designation of the church to receive and administer it was secondary.  It was simply a gift to a definite religious organization, which had ceased to exist before any interest vested in it.  <u>To authorize the payment to the First Society would be, not to carry out any intention that can be found in the will read in the light of surrounding circumstances, but to make a will for the testatrix, which we cannot do</u>.

<u>Id.</u> at 144-145 (emphasis added).

The Banta trust agreement is comparable to the will in <u>Duncan</u>.  There is no indication of any intent other than to benefit the Old Saybrook Police Benevolent Association.  Indeed, Banta's specific indication that the funds were for the organization's "unrestricted use" shows that her dominant intent was for the organization to receive the funds, and not for the funds to be used for any particular charitable purpose.  As a result, to authorize payment of the Banta trust monies to the Union would essentially be to make a new testamentary trust for Banta, an action which neither this, nor any other court, can perform.

Regarding the Union's standing to bring the present suit, because the Union is not entitled to any gift from the trust on either of the theories it advances, it was not injured by the alleged improper disbursement of trust assets.  Thus, even assuming the alleged RICO violations existed, the Union was not injured.  Consequently, neither of the Union's theories give it standing to pursue its RICO claims, and the defendants' Motions to Dismiss Counts Six and Seven for lack of subject matter jurisdiction are granted.

    B.    <u>State Law Claims</u>

Because the court has determined that the Union's RICO claims must be dismissed, the only remaining claims are state law claims for civil theft, breach of the

14

Connecticut Unfair Trade Practices Act, tortious interference, unjust enrichment, and breach of fiduciary duty.  The court's jurisdiction over these claims exists solely by virtue of 28 U.S.C. § 1367.

When all federal claims have been dismissed prior to trial, it is appropriate for the district court to leave the state law claims to the state courts.  Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).  Indeed, it is more than appropriate: "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."  Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).  Consequently, the court declines to exercise jurisdiction over the Union's claims arising under Connecticut state law.

## V.    CONCLUSION

For the reasons stated herein, the defendants' Motions to Dismiss [Doc. Nos. 45 & 48] are **GRANTED** as to Counts Six and Seven.  The court declines to exercise supplemental jurisdiction over Counts One through Five, which are dismissed without prejudice to refiling in state court.  Judgment shall enter for the defendants, and the Clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of February, 2009.


           /s/ Janet C. Hall
           Janet C. Hall
           United States District Judge


15